**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Karseem Nicholas Hardaway, Appellant.

Appellate Case No. 2024-001245

———————————

Appeal From Charleston County
Deadra L. Jefferson, Circuit Court Judge

———————————

Unpublished Opinion No. 2026-UP-360
Heard April 14, 2026 – Filed July 8, 2026

———————————

**AFFIRMED**

———————————

Assistant Appellate Defender Wesley Chandler Norville, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General Tommy Evans, Jr., and Assistant Attorney General Paul Sanders Linker, Jr., all of Columbia, and Solicitor Scarlett Anne Wilson, of Charleston, all for Respondent.

———————————

**PER CURIAM:** Karseem Hardaway appeals his convictions for murder and possession of a weapon during the commission of a violent crime, arguing the trial court erred in denying his motions to suppress evidence seized from four search warrants for phone and internet data. We affirm.

## I.  BACKGROUND

On July 13, 2021, David Conner's body was found in his apartment with a single gunshot wound to the back of the neck. Conner arrived home from work just after 5:30 p.m., and his roommate discovered his body around 6:00 p.m. Detectives determined Conner's time of death was around 5:36 p.m. and reported that nothing inside the apartment appeared to be disturbed and nothing was stolen.

In their initial investigation, detectives spoke with Hardaway's sister, Tiffany Hardaway, who lived in an apartment one door from Conner's first-floor apartment toward the front breezeway entrance to the building. Tiffany supplied detectives with videos from her Ring doorbell camera. One of the videos depicted a young black man exiting her apartment and moving in the direction of Conner's apartment at 5:04 p.m. on the day of the murder. Detectives were surprised to find a young man exiting her home because Tiffany told detectives she lived alone and had not disclosed that anyone else was at her apartment on the date of the murder. Upon further investigation, detectives learned that her brother was Hardaway. Detectives were already familiar with him because of his previous firearm-related arrests.

On July 14, apartment management reported to detectives that Conner called the leasing office around 9:00 p.m. on the day before the murder "to report that he had just had a confrontation with 'a guy' who was causing a disturbance outside of his apartment by talking too loudly on his telephone." When he asked the man to quiet down, the man cursed at him. Conner was "worried that it was not a good situation" and requested that management remove the man from the premises. Detectives returned to Tiffany's apartment on July 14 to see if her Ring camera captured that altercation. While Tiffany searched for the footage, detectives watched her open her Ring app and appear to delete a video recording before handing them her phone.

While at the apartment complex on July 14, detectives confronted Hardaway while he was sitting in his red Honda. During the encounter, Hardaway told detectives he stayed the night with his sister on July 12, and he positively identified himself on Tiffany's Ring video leaving her apartment at 5:04 p.m. on the day of the murder. He told detectives that he left the complex right after the video was taken

and went to John's Island.  Detectives later obtained surveillance videos from July 12 showing a car matching Hardaway's red Honda leaving the apartment complex at 5:34 p.m. and driving on John's Island at 5:42 p.m.  Detectives then went to Hardaway's gym where they obtained his cell phone number and email address from his membership application.

Detectives obtained four search warrants during the investigation that are the subject of this appeal.  On July 19, 2021, detectives obtained a warrant compelling Google to provide information associated with Hardaway's Gmail account.  On July 20, detectives obtained a warrant to seize Hardaway's cell phone.  Detectives then seized his cell phone during a traffic stop on July 28.  On July 26, detectives obtained a search warrant for all Verizon Wireless records relating to Hardaway's cell phone number.  Finally, on July 30, detectives obtained a warrant to search the contents of Hardaway's cell phone.

All of the search warrants contain the same information regarding the progress of the police investigation through July 16.  The July 30 search warrant contains additional information related to the ongoing investigation after July 16.

Prior to trial, Hardaway filed motions to suppress the cell phone evidence, Verizon search warrant evidence, and Gmail Account evidence, arguing that the magistrate erred in finding there was probable cause to issue the search warrants.  Each motion to suppress challenged the search warrant affidavits on the grounds they "failed to set forth any facts as to why police believe [Hardaway] committed the crime" and argued Hardaway's mere presence was insufficient to establish probable cause.  The trial court held a pre-trial motions hearing on March 20, 2024, in which Hardaway made similar arguments in support of his motion.

At the motions hearing, the State argued detectives provided sufficient facts to establish probable cause stating:

> [W]e've got the fact that [Hardaway] is lying about his whereabouts during the murder.  He's the last seen on video in close proximity of time and location to the murder. We've got that he has access to handguns.  We've got that this crime was probably committed by a neighbor because . . . it arose during a confrontation described by [Conner] in the voicemail.  [Hardaway] is a neighbor, at least when he stays with the sister.  And we've got evidence that this isn't a robbery or some other motivated

thing. This is motivated by some personal conflict . . . the subject of the voicemail the night before.

We've also got a connection specifically to [Hardaway's] phone through Tiffany's phone.

And as to the nexus to the criminal evidence, I think we've got more than enough in the search warrant here for the Verizon records at the end outlined through [the detective's] experience and the type of information that he thinks he can receive from those.

The trial court denied all of Hardaway's motions to suppress. After a four-day trial, the jury found Hardaway guilty on both charges. He was sentenced to forty years' imprisonment for murder with a concurrent five years for possession of a weapon during the commission of a violent crime. This appeal followed.

## II. STANDARD OF REVIEW

Our "review of a motion to suppress based on the Fourth Amendment involves a two-step analysis. This dual inquiry means [appellate courts] review the trial court's factual findings for any evidentiary support, but the ultimate legal conclusion . . . is a question of law subject to de novo review." *State v. Frasier*, 437 S.C. 625, 633–34, 879 S.E.2d 762, 766 (2022).

## III. LAW/ANALYSIS

Hardaway argues that the trial court erred in denying his motions to suppress because "[t]he vast majority of the facts stated in the affidavits are either not suspicious or not related to Hardaway" and, therefore, do not amount to probable cause. We disagree.

The Fourth Amendment to the United States Constitution provides that "no [w]arrants shall [be] issued, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Section 17-13-140 of the South Carolina Code (2014) allows magistrates to issue warrants to search for and seize property which tends to show that a particular person committed a criminal offense. A magistrate may only issue a search warrant "upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant.'" § 17-13-140.

"The term 'probable cause' does not import absolute certainty. Rather, in determining whether a search warrant should be issued, magistrates are concerned with probabilities and not certainties." *State v. Dupree*, 354 S.C. 676, 683, 583 S.E.2d 437, 441 (Ct. App. 2003) (citations omitted); *see also State v. White*, 446 S.C. 276, 286, 919 S.E.2d 37, 42 (Ct. App. 2025) ("[P]robable cause . . . does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." (alteration in original) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983))).

We find the totality of the circumstances listed in the affidavits for the search warrant provided the magistrate with a "substantial basis for concluding probable cause existed." *Dupree*, 354 S.C. at 683, 583 S.E.2d at 441. Specifically, Hardaway identified himself on Tiffany's Ring camera footage walking in the direction of Conner's apartment at 5:04 p.m. on the day of the murder and told detectives that "upon exiting the apartment at that time, he left the complex . . . and drove to an address on Johns Island." No other person passed by her Ring camera between the time Conner returned home and the time his roommate discovered his body. Detectives located video surveillance footage of Hardaway's car leaving the apartment complex at 5:34 p.m. rather than around 5:04 p.m. Detectives noted in their search warrant affidavits that his 5:34 p.m. departure "leaves nearly 30 minutes unaccounted for which potentially places [Hardaway] in the area of the incident location at the time of the murder." In addition, Hardaway sent Tiffany a text message that day at 5:36 p.m. asking if her children could lock up the apartment because "he had forgotten to do so after he left." We believe this information, coupled with Conner's confrontation with an unidentified male in the hallway the night before the murder, and Hardaway's admission that he slept at Tiffany's apartment that night raise a fair probability that evidence of Conner's murder could be found on Hardaway's cell phone and Gmail account.

Hardaway argues that the trial court erred as a matter of law because it applied the wrong standard for establishing probable cause. Although we agree that the court misstated the standard initially, we hold the court did not err in finding there was sufficient probable cause to grant the search warrants. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."); *State v. Thompson*, 419 S.C. 250, 256, 797 S.E.2d 716, 719 (2017) ("In determining whether a search warrant is supported

by probable cause, the crucial element is not whether the target of the search is suspected of a crime, *but whether it is reasonable to believe that the items to be seized will be found in the place to be searched*."); *State v. Tench*, 353 S.C. 531, 534, 579 S.E.2d 314, 316 (2003) (stating that a search warrant is valid if the affidavit supporting it shows a fair probability the contraband sought will be found in the location to be searched).

## IV.   CONCLUSION

Based on the foregoing, Hardaway's convictions and sentences are

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**